IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH PACHECO,**

      **Plaintiff,**

vs.                                                                                          No.  08cv0989 DJS

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Plaintiff's Motion to Remand **[Doc. No. 18]**, filed on September 8, 2009, and fully briefed on October 26, 2009.  Plaintiff, appearing pro se, brings this action pursuant to 42 U.S.C. §405(g) for review of a final decision of the Commissioner for the Social Security Administration denying her request for a waiver of her overpayment. [1]   Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED**.

## I.  Background

      In July 1987, an Administrative Law Judge (ALJ) found Plaintiff was entitled to disability benefits under Title II of the Social Security Act.  Tr. 12.  On August 31, 1993, Plaintiff returned to substantial gainful activity.  *Id.*  Subsequently, the Social Security Administration ("the Agency") determined that because Plaintiff continued to receive monthly

---

[1] This case does not involve a disability decision.  However, in her April 21, 2006 decision, the ALJ provided information about the underlying case history.  *See* Tr. 13.

disability insurance benefits after she was no longer entitled, she had received an overpayment of benefits in the amount of $23,675.90, $15,507.90 on her on behalf and $8,168.00 as representative payee on behalf of her minor child.[2]  *Id.*

On December 27, 1993, Plaintiff completed and submitted a "Work Activity Report-Employee" form to the Agency.  Tr. 21-24.  In this form, Plaintiff indicated she had worked for the Albuquerque Public Schools as an "Emergency Substitute Teacher's Aide at a juvenile detention center starting May 11, 1993 through June 4, 1993.  Tr. 21.  In this position, Plaintiff worked 5 days per week, 3 hours per day.  *Id.*  Plaintiff also reported working as a Science/Health teacher for the Albuquerque Public Schools from August 31, 1993, through December1993.  *Id.*

> On May 8, 1995, the Agency notified Plaintiff as follows:
>
> This notice concerns your continuing entitlement to benefits under the Social Security Disability Program.
>
> A person's disability ends if he or she becomes able to do substantial gainful work.  Earnings over $300 per month from 1980 through 1989, or over $500 per month after 1989, are usually considered substantial and gainful.
>
> The law provides that an individual will receive benefit payments for the month disability ends and the following 2 months.  Not until a person has performed services in at least 9 months is a decision made as to whether the person has become able to do substantial gainful work.  <u>The evidence in your case shows that you have performed services in at least 9 months and that you are able to do substantial gainful work as of September 1993.  Accordingly, the last disability payment to which you are entitled is for the month of November 1993.</u>
>
> The law provides for an extended period of eligibility of up to 36 months after your trial work period ends.  During this period, monthly benefit checks can be started again without a new disability application if substantial gainful work stops.  Please

---

[2] In 2004, Plaintiff's federal tax refund was garnished to pay down the overpayment.  Thus, the overpayment was reduced by $1,231.90.  Tr. 12.  Accordingly, Plaintiff still owes the $22,444.00.

contact any Social Security office right away if there is a change in your work activity during this extended period of eligibility. Based on your work activity, your extended period of eligibility has ended.

Tr. 25.

The record does not contain the Agency's notice concerning Plaintiff's overpayment amount. However, Plaintiff received notice of the overpayment as she filed a "Request for Waiver of Overpayment Recovery or Change in Repayment Rate" form with the Agency on **February 23, 1996.** Tr. 27. In this form, Plaintiff indicated an overpayment of $23,675.00 and asserted "[t]he overpayment was not [her] fault and [she could] not afford to pay the money back and/or it was unfair for some other reason." *Id*. Plaintiff explained she was not at fault for the overpayment because she reported to the Agency "that [she] was working but they kept paying [her]." Tr. 28. Plaintiff claimed she assumed she was still due the checks. *Id.* Plaintiff also provided the Agency with her monthly household income ($2,396.00, including spouse's income) and a monthly household expenses statement which totaled $2,443.00. Tr. 31-32. Thus, Plaintiff reported a deficit of $72.00 each month. Tr. 33. Plaintiff also commented she would have to start paying her student loans on April 1, 1996, and start paying at least the minimum payment to her Visa credit card. Id.

On June 24, 1996, the Agency did not approve Plaintiff's request for waiver of recovery of overpayment. Tr. 35-37. Specifically, the Agency found as follows:

> This concerns your request for waiver of recovery of the overpayment of $23,675.90. We cannot approve your request for waiver of recovery of your overpayment.
>
> Section 204 of the Social Security Act provides that there shall be no recovery of an overpayment when the person liable for repayment is without fault and recovery would deprive the person of income for ordinary and necessary living expenses or would be unfair for some other reason. Both conditions must be met. Although the individual from whom we are attempting to recover the overpayment may need substantially all current monthly income to meet current and necessary living

3

> expenses, recovery of the overpayment is required unless the person is also without fault in causing the overpayment.
>
> \*\*   \*\*   \*\*
>
> Our records show you completed a work activity report in December 1993. Based on this report you demonstrated the ability to work since you worked 40 hours a week and earned over $500.00 per month, which demonstrated substantial gainful activity.
>
> You were informed by the Administration in our letter dated May 6, 1989 that based on the evidence in your file it was determined that you had completed your 9-month trial work period. Since you returned to work in September 1993 and worked through January 1995 it appeared you had demonstrated the ability to engage in substantial gainful activity in September 1993. Therefore, the last disability payment would [be] before January 1993.
>
> Our letters dated May 6, 1989 and May 8, 1995 informed you that if you worked any months since you became entitled counts as one of the 9 work months. You were also informed that if a person's medical condition does not prevent them from working benefits would continue 3 additional months after you completed your trial work period.
>
> Since you were aware that you could receive full benefit checks for the 9-month trial work period after beginning to work full-time, and you continued to receive checks thereafter without questioning your entitlement to those incorrect payments, we cannot find that your (sic) are without fault in causing this overpayment. Waiver is denied.

Tr. 35-36.

On July 22, 1997, Plaintiff requested a reconsideration of the decision denying her request for a waiver. Tr. 38-39. Plaintiff alleged she "did not believe that I got a 9 month trial work period" and did not "believe this is fair." Tr. 38. Plaintiff also asserted she misunderstood the rules/regulations for returning to work. *Id.*

On November 14, 1997, the Agency sent Plaintiff a letter informing her of her right to a personal conference concerning her request for waiver of the overpayment. Tr. 40-41. On February 3, 2000, an Agency employee submitted a "Report of Contact" addressing Plaintiff's July 22, 1997 contact. Tr. 42. The report noted Plaintiff's reconsideration request of the

decision denying her request for a waiver. The report also stated, "Unfortunately the file stayed in this office (Albuquerque). It should have immediately been returned to PC7 (program service center) for a reconsideration on the waiver denial." *Id.* On the same day, the Agency "remailed" the July 27, 1997 Personal Conference Notice, advising Plaintiff as follows:

> You advised us that you did not want a personal conference to review the denial of your waiver request. Therefore, there is no basis for changing the decision to deny your waiver request. We are returning your claims folder to the processing center and advising that office of the need to recover your overpayment.
>
> Although you no longer have the right to a personal conference, if you do not agree that your request for waiver should be denied, you have the right, within 60 days from the date you receive this notice, to request that the decision be reconsidered by a Social Security employee in the processing center who did not participate in the initial decision. If you request this independent review, please submit any additional information you have. However, even if you appeal the decision, we will not stop recovering the overpayment.

Tr. 43.

On March 25, 2004, the Office of Disability and International Operations in Maryland notified Plaintiff it had denied her request for reconsideration. Tr. 44-45. Specifically, the Notice of Reconsideration stated:

> We have reviewed the overpayment determination to deny your request for waiver and, based on the information now available, find that the overpayment determination was correct. A high degree of care is required of a social security insurance beneficiary in obtaining information regarding continued entitlement to benefit checks. Our records show that you worked in 1985, 1986 and 1987. We notified you in our letter dated 05/16/89 that you competed your nine month trial work period and this if you earned over the amount allowed for substantial gainful employment your benefits would cease. Our records show that you returned to work in 09/93 and earned over $500.00 which was the amount considered to be substantial gainful activity. Therefore, since you should have been aware that you could no longer receive disability checks after you returned to work in 1993, we cannot find you to be without fault in causing the overpayment and waiver is denied. Our records show that you are overpaid $15,507.90 and as payee for Robert you are overpaid $8168.00 for a total of $23,675.90 for 12/93 - 07/95.

Tr. 44.

On July 23, 2004, Plaintiff sent the Agency a "Request to Reopen Social Security Disability Overpayment Case." Tr. 46-49. Plaintiff argued that reopening her case would allow her the opportunity to review her file, attend a personal conference and participate in a reconsideration hearing. On the same day, an Agency employee completed a "Report of Contact." Tr. 50. The employee noted Plaintiff had alleged she had not received her appeals right regarding the denial of her waiver of overpayment. The employee also noted she sent Plaintiff a copy of the "Notice of Reconsideration" dated 3/25/04 but may have sent it to Plaintiff's previous address. *Id.*

On November 12, 2004, Plaintiff filed a "Request for Hearing by Administrative Law Judge." Tr. 51. The Agency granted this request. The ALJ held the administrative hearing on October 25, 2005. Tr. 78-114.

On April 21, 2006, the ALJ entered her decision, finding "that collection of overpayment made to Elizabeth A. Pacheco in the amount of $23,675.90 shall not be waived." Tr. 16. The ALJ framed the issues before her as "whether Ms. Pacheco is without fault in the overpayment of Title II disability insurance benefits; and, if so, whether recovery of the overpayment would defeat the purpose of Title II of the Act or be against equity and good conscience." Tr. 12. The ALJ determined Plaintiff was not at fault in accepting the disability checks she received after November 1993, the month her benefits should have been terminated. Nonetheless, the ALJ found:

> The next question on appeal from the Administration's denial of Ms. Pacheco's request for waiver [is] whether recovery would defeat the purpose fo Title II of the Act, 20 C.F.R. §404.506(a), i.e., whether recovery would deprive Ms. Pacheco of income required for ordinary and necessary living expenses. Ms. Pacheco testified at the hearing before me as to her income, from teaching and from tutoring after school, as well as her living expenses. She stated that, although her expenses are nearly as high as her income, she would be able to make small monthly payments to

6

>the Administration to repay the overpayment. Having considered all of this evidence, I find that recovery of the overpayment would not defeat the purpose of Title II in this case. 20 CFR §404.508.
>
>The final question is whether recovery of the overpayment in this case would be against equity and good conscience. 20 CFR §404.506(a). I find no evidence nor any claim that Ms. Pacheco changed her position for the worse or relinquished a valuable right because of reliance upon the checks she received in overpayment. Accordingly, I find that recovery of the overpayment in this case would not be against equity and good conscience, as defined in 20 CFR Section 404.509.
>After careful consideration of all of the evidence in this case, including the documentary evidence in the case file and the testimony adduced at hearing, I conclude that Ms. Pacheco is not entitled to a waiver of the overpayment.

Tr. 14.

## II. Standard of Review

The Court's review of the Commissioner's decision that Plaintiff was not entitled to waiver of overpayment recovery is limited to whether the decision is supported by substantial evidence on the record as a whole, and whether the decision complies with relevant legal standards. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992).

In her motion to remand, Plaintiff asserted that "[i]n accordance with [20 C.F.R. §404.316(c)(1)(i)-(iii)] her return to the workforce as a Science teacher was successful because of the counseling and assistance from the Division of Vocational Rehabilitation that qualified her to continue to receive disability benefits from November 1993 through July 1995." Pl.'s Mot. Remand at 3. At the administrative hearing, Plaintiff was represented by counsel. At the hearing, Plaintiff's counsel also raised the issue:

Atty:   Now, there's also another side issue, your Honor. During this period of time Ms. Pacheco was receiving counseling through DVR and the, if you go to the Social Security handbook part 506 a disabled person who is in a rehabilitation program, their benefits can continue provided that they meet the criteria under the section. So, those are the issues that basically we would like to address today.

Tr. 81. As to this issue, Plaintiff testified at the administrative hearing that she was engaged in a Division of Vocational Rehabilitation program and had a counselor assist her while she was taking classes to become a certified teacher and also assisted her after she started her teaching job. Tr. 88-93. Specifically, Plaintiff testified:

Atty:   Okay, now during this period of time from, from August of '93 to, for that 11 or 12-month period that you were working as a school teacher did you need that DVR counseling that you were receiving?

Claimant:   I would say I would [not] have succeeded without their help. Jenny Colts helped me figure out a way to do the job I was doing. She helped contact, APS had master teachers that were assigned to help new teachers and they had a special program called Chips [phonetic] and so she got me involved with those people. So, she helped me get through that first, it was extra help because she had once been a teacher herself. So, she helped me figure out how I was going to get everything done that I needed to do outside of classroom and also at that time I was teaching health but I didn't have a license for it. So, [inaudible] decided to take some classes to be able to do that health teaching.

Atty:   And how long did your DVR counseling go on?

Claimant:   Through Christmas vacation in '94. I came in and we had like a termination conference and she gave me papers saying this is how much your whole entire plan cost. This is how much we helped you with school during the while time you were a client and these are all the things we accomplished for you in the time you were a client and now you're working and able to do it and so this is the end of your, you know, it was termination papers.

Atty:   And when was that?

Claimant:   Exit papers.

Atty:   When was that?

Claimant:   It was during Christmas vacation in '94. So, it was between the 20th of December and the first of the [1995] year.

Tr. 92-93.

Section 404.316(c)(1), provides:

(c)(1)   Your benefits, and those of your dependents, may be continued after your impairment is no longer disabling if–

(i)   You are participating in an appropriate program of vocational rehabilitation services, employment services, or other support services as described in §404.327(a) and (b);[3]

(ii)   You began participating in the program before the date your disability ended; and

---

[3] The Commissioner does not challenge the appropriateness of Plaintiff's vocational rehabilitation program under §404.327(a) and (b).

      (iii)    We have determined under §404.328[4] that your completion of the program, or your continuation in the program for a specified period of time, will increase the likelihood that you will not have to return to the disability benefit rolls.

20 C.F.R. §404.316(c)(1)(i)-(iii).

      In this case, the ALJ found Plaintiff's "disability had ceased as of September 1, 1993." Tr. 15, Finding No. 4. Additionally, Plaintiff testified she was participating in her vocational rehabilitation program before September 1, 1993, the date the ALJ determined her disability ceased. Moreover, Plaintiff, a registered nurse working in an Intensive Care unit prior to her disabling impairments, successfully completed the vocational rehabilitation program and is now a certified teacher and no longer on the disability benefit rolls. Thus, it would appear that Plaintiff meets the criteria set forth in §404.316(c)(1)(i-iii). If so, Plaintiff would be entitled to continued disability insurance benefits up to the month in which she completed the program. *See* 20 C.F.R. §404.316(c)(2)(i). Consequently, this would affect the overpayment amount the Agency claims it has a right to recover from Plaintiff. Hence, this issue must be resolved.

      The Commissioner contends Plaintiff was not entitled to continued disability insurance benefits after November 1993 even if she was receiving vocational rehabilitation services after that date because §404.316(c)(1) "applies only when a beneficiary's entitlement to benefits ends because he or she is no longer disabled" and "does not apply when, as here, the beneficiary's

---

[4] Under the relevant subsection of §404.328, the Commissioner determines that a claimant's completion of a vocational rehabilitation program for a specified period of time will increase the likelihood a claimant will not have to return to the disability rolls if claimant's completion of the program will provide the claimant with education so that claimant would more likely be able to adjust to other work that exists in the national economy despite a possible future reduction in claimant's residual functional capacity. 20 C.F.R. §404.328(a).

10

entitlement to benefits ends because she has completed her trial work period and is engaging in substantial gainful." Def.'s Resp. at 10.

The Court disagrees with this narrow interpretation of §404.316(c)(1). Moreover, the ALJ found Plaintiff's "disability had ceased as of September 1, 1993." Tr. 15. Thus, Plaintiff was engaged in substantial gainful employment because she was no longer disabled. However, because the ALJ never addressed the issue, the Court will remand this action for the ALJ to consider, in the first instance, whether Plaintiff was entitled to continued disability insurance benefits pursuant to §404.316(c)(1)(i)-(iii). Accordingly, this case is remanded to the Commissioner for further administrative proceedings not inconsistent with this opinion.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**